**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIA KHANGI, LLOYD SONGER, and NICOLE FLICK on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>REVLON CONSUMER PRODUCTS LLC,<br><br>Defendant. | Case No.: 1:26-cv-5254<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR CONSUMER FRAUD**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs MARIA KHANGI, LLOYD SONGER, and NICOLE FLICK on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, bring this action against REVLON CONSUMER PRODUCTS LLC ("Revlon"), and allege the following upon their own knowledge or, where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1. Revlon sells Mitchum "Unscented" deodorant in gel and roll-on varieties (the "Products").









2. Unsurprisingly, consumers believe the Products are unscented, *i.e.* free of fragrance. Revlon's marketing, however, is false and misleading because the Products actually contain fragrance and are therefore scented.

3. Plaintiffs bring this action against Revlon on behalf of themselves, similarly situated Class Members, and the general public to enjoin Revlon from deceptively marketing the Products in this manner, and to recover compensation for injured Class Members.

## THE PARTIES

4. Plaintiff Maria Khangi presently resides and intends to continue to reside in Erie County, New York. Accordingly, she is a citizen of the State of New York.

5. Plaintiff Lloyd Songer presently resides and intends to continue to reside in Contra Costa County, California. Accordingly, he is a citizen of the State of California.

6. Plaintiff Nicole Flick presently resides and intends to continue to reside in San Diego County, California. Accordingly, she is a citizen of the State of California.

7. Defendant Revlon is a Delaware corporation with its principal place of business in New York, New York. Revlon distributes and markets the Products nationwide, including in New York and California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a state different from Defendant. In addition, more than two-thirds of the class members reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

9. The Court has personal jurisdiction over Revlon because Revlon has its headquarters in New York and has purposely availed itself of the benefits and privileges of conducting business activities within New York.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant resides (*i.e.*, is subject to personal jurisdiction) in this district.

## FACTS

### I. Revlon Falsely Markets Mitchum Deodorants Containing Fragrance as "Unscented"

11. Consumer demand for unscented skincare and hygiene products has grown drastically in recent years, driven by heightened awareness of health and ingredient safety issues.

12. "According to an NIH study, the ingredients in fragrance can have adverse effects on health. Components and contaminants in fragrances can cause allergies, breast cancer, reproductive disorders, skin allergies, nervous system damage and migraine headaches. This emerging knowledge has fueled the desire for a more natural and gentle skincare routine, and the demand for unscented products."[1]

13. Moreover, "[s]ensitive skin is on the rise: Studies suggest that over 50% of adults report skin sensitivity."[2] Unscented products are particularly beneficial for the many consumers with skin sensitivities, allergies, respiratory disorders, or who are otherwise sensitive to perfumes. Unscented products minimize these risks and provide a safer, more desirable option for many consumers.

---

[1] https://livnature.com/blogs/news/growing-popularity-of-unscented-products-here-s-why (citing Zahra Kazemi et al., *Evaluation of pollutants in perfumes, colognes and health effects on the consumer: a systematic review*, J. ENVIRON. HEALTH SCI. ENG., Vol. 20, No. 1, pp. 589-98 (Feb. 3, 2022)).

[2] https://terra-tory.com/blogs/terra-haus/think-fragrance-free-doesn-t-sell-the-market-says-otherwise.

14. Dermatologists identify fragrance as a common skin irritant that should be avoided by those with sensitive skin.[3] This is because "[m]any fragrances contain allergens that can trigger reactions. Opting for fragrance-free options helps minimize the risk of irritation and keeps your skin calm and healthy."[4]

15. Many consumers are thus willing to pay more for products that are unscented, i.e. free of fragrance. Unsurprisingly, consumers believe products labeled "Unscented" will be in fact unscented, i.e. free of fragrance.

16. As a sophisticated marketing company that studies consumer demand, Revlon is aware of this strong consumer preference and capitalizes on it by marketing and labeling the Products as "Unscented."

17. Revlon's claims that the Products are unscented are false and misleading, however, because the Products contain "parfum (fragrance)."

18. "Parfum" is French for "perfume," which means "a substance, extract, or preparation for diffusing or imparting an agreeable or attractive smell, especially a fluid containing fragrant natural oils extracted from flowers, woods, etc., or similar synthetic oils."[5] "Scent" is listed as a synonym of "perfume."[6]

---

[3] *See*, *e.g.*, Andrea McLin, MPAS, PA-C, *Sensitive Skin? Avoid These 8 Common Irritants in Products You Use Daily*, Epiphany Dermatology, *available at* https://www.epiphanydermatology.com/medical-dermatology/sensitive-skin; Dr. Levy, *Navigating Sensitive Skin Fragrance Free Products That Actually Deliver*, Dermatology of Seattle & Bellevue (Sep. 23, 2025), *available at* https://dermatologyseattle.com/navigating-sensitive-skin-fragrance-free-products-that-actually-deliver.

[4] *Id.*

[5] https://www.dictionary.com/browse/perfume.

[6] *Id.*

19. Fragrance is similarly defined as "the quality of being fragrant; a sweet or pleasing scent" or "perfume, cologne, toilet water, or the like."[7]

20. According to the Environmental Working Group, "[t]he word 'fragrance' or 'parfum' on the product label represents an undisclosed mixture of various scent chemicals and ingredients used as fragrance dispersants such as diethyl phthalate. Fragrance mixes have been associated with allergies, dermatitis, respiratory distress and potential effects on the reproductive system."[8]

21. By falsely labeling the Products "Unscented" when they are formulated with added fragrance, Revlon chose to increase its profits at the expense of consumer trust.

22. Because the Products are prominently labeled as "UNSCENTED," reasonable consumers frequently do not—particularly prior to purchase—read the fine-print ingredient list that includes "parfum (fragrance)" in the midst of unrecognizable ingredients like "aluminum sesquichlorohydrate" "cyclopentasiloxane," and "tetramethyl acetyloctahydronaphthalenes," among others.

[continued]

[7] https://www.dictionary.com/browse/fragrance.

[8] https://www.ewg.org/skindeep/ingredients/702512-FRAGRANCE.




23. For the roll-on Product, the back-label does not even list the inactive ingredients, including "parfum (fragrance)," which are only visible by peeling back the label to reveal additional Product information. Reasonable consumers usually do not peel back the product label to read the inactive ingredients, especially not before purchasing the Product.






24. Adding to Revlon's deception, prior approximately early 2021, the Products actually *were* unscented, meaning they contained no added parfum or other fragrance.

25. Some consumers noted the change, with one complaining online that "Both the old bottle and the new bottle say 'UNSCENTED'. But in spite of that, the new bottle says in the inactive ingredients list, 'Parfum (fragrance)'. What the heck? You can't add fragrance to a product and still label it 'UNSCENTED'!"

★☆☆☆☆ **They changed the formula, and added disgusting perfume, even though it still says "UNSCENTED"**

Reviewed in the United States on April 3, 2021

**Verified Purchase**

I have used Mitchum roll-on for over 30 years. They changed the formula already once before, about 15 years ago, to use a different aluminum compound that was much less effective as an antiperspirant. But now they have changed the formula again, and SERIOUSLY screwed up this product. I ordered Mitchum as usual, from the same Amazon listing I always order from. But instead of getting the usual "Advanced Control" roll-on that I have been using for the last 15 years (and as depicted in the photos in this listing), I was shipped a bottle with a slightly different design, and labeled "Triple Odor Defence". Both the old bottle and the new bottle say "UNSCENTED". But in spite of that, the new bottle says in the inactive ingredients list, "Parfum (fragrance)". What the heck? You can't add fragrance to a product and still label it "UNSCENTED"! And worst of all, this fragrance smells like old lady perfume. It's gag-inducingly disgusting, and overpowering. I can't even wash this stuff off my armpits, it keeps smelling.

I really hope this is not a permanent change. If it is, my 30-year commitment to Mitchum is over.



26. Reasonable consumers continue to be misled by Revlon's "Unscented" marketing today, just as Plaintiffs were.

> ★☆☆☆☆ **NOT Unscented As Advertised**
> Reviewed in the United States on August 30, 2025
> **Verified Purchase**
> This item is labelled by the manufacturer and sold as unscented. It reeks. I cannot use it and cannot return it on time because I work outside the US and will not be able to fly back in time. $23 wasted. Do not purchase if uncented is important to you.

> ★☆☆☆☆ **False advertising - contains fragrance**
> Reviewed in the United States on June 11, 2026
> Color: multi | Size: 3.4 Fl Oz (Pack of 1) | **Verified Purchase**
> Misleading. Says "unscented" but contains fragrance.

## II. Plaintiffs' Purchases, Reliance, and Injury

27. Plaintiff Maria Khangi regularly purchased the gel variety of Mitchum Unscented Deodorant throughout the Class Period, with her last purchase in approximately November 2025. Ms. Khangi often made her purchases from Target in Depew, New York.

28. When purchasing the Product, Ms. Khangi was searching for a deodorant that was free of fragrance. In purchasing the Product, Ms. Khangi was exposed to, read, and relied on the label, including that the Product is "Unscented," which Ms. Khangi reasonably understood to mean free of fragrance. Ms. Khangi did not notice fragrance in the fine-print ingredient list, particularly since she had been purchasing the product before its formulation change that added fragrance in 2021. Because the Product contains fragrance, however, it is not unscented or fragrance-free.

29. Plaintiff Lloyd Songer regularly purchased the roll-on variety of Mitchum Men's Unscented Deodorant throughout the Class Period, with his last purchase in approximately May

2026. Mr. Songer often made his purchases from stores such as CVS in Brentwood, California and Walgreens in Antioch, California.

30. When purchasing the Product, Mr. Songer was searching for a deodorant that was free of fragrance. In purchasing the Product, Mr. Songer was exposed to, read, and relied on the label, including that the Product is "Unscented," which Mr. Songer reasonably understood to mean free of fragrance. Mr. Songer did not notice fragrance in the fine-print ingredient list when purchasing the product.

31. Beginning in 2024, and through her last purchase in approximately April 2026, Plaintiff Nicole Flick regularly purchased the gel variety of Mitchum Men's Unscented Deodorant. Ms. Flick often made her purchases from online retailers such as Amazon, and stores such as Walmart in San Diego, California.

32. When purchasing the Product, Ms. Flick was searching for a deodorant that was free of fragrance. In purchasing the Product, Ms. Flick was exposed to, read, and relied on the label, including that the Product is "Unscented," which Ms. Flick reasonably understood to mean free of fragrance. Ms. Flick did not notice fragrance in the fine-print ingredient list when purchasing the product.

33. Plaintiffs acted reasonably in relying on Revlon's "Unscented" representations, which Revlon intentionally placed on the Products' labeling with the intent to induce average consumers into purchasing the Products.

34. Because the Products contain fragrance, they are not unscented or fragrance-free. Instead of receiving products that were unscented and free of fragrance, Plaintiffs received Products that contained added fragrance.

35. The Products cost more than similar products without misleading labeling and would have cost less absent Revlon's false and misleading statements.

36. Through the misleading labeling claims, Revlon was able to gain a greater share of deodorant market than it would have otherwise and to increase the size of the market.

37. Plaintiffs paid more for the Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling complained of herein.

38. For these reasons, the Products were worth less than what Plaintiffs and other Class Members paid for them.

39. Plaintiffs and other Class Members lost money as a result of Revlon's deceptive claims and practices in that they did not receive what they paid for when purchasing the Products.

40. Plaintiffs still wish to purchase unscented products. They continue to see the Products at stores where they shop. Plaintiffs would purchase the Products in the future if they were truly "Unscented," but as lay consumers, Plaintiffs may be unable to determine that in the future absent an injunction.

41. Plaintiffs' substantive right to a marketplace free of fraud, where they are entitled to rely with confidence on representations made by Revlon, continues to be violated every time they are exposed to the Products' misleading labeling claims.

42. Plaintiffs Songer and Flick's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

43. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a Class comprised of the following subclasses:

a. **New York Subclass:** all persons in New York who purchased any of the Products for personal or household use during the three years preceding the date of the filing of this Complaint to the time a class is notified (the "New York Class Period"); and

b. **California Subclass:** all persons in California who purchased any of the Products for personal or household use during the four years preceding the date of the filing of this Complaint to the time a class is notified (the "California Class Period").

44. The Members in the proposed Class and each Subclass are so numerous that individual joinder of all Members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

45. Questions of law and fact common to Plaintiffs and the Class (or individual Subclasses) include:

a. whether Revlon's "Unscented" labeling and advertising was material, or likely to be material, to a reasonable consumer, or whether Revlon had reason to believe that it was;

b. whether the Products contain added fragrance;

c. whether, due to the Products' fragrance content, the challenged labeling is false, misleading, or reasonably likely to deceive a reasonable consumer;

d. whether Revlon's conduct is unfair or violates public policy;

e. whether Revlon's conduct violates California or federal cosmetics statutes or regulations;

f. the proper amount of damages, including punitive damages;

g. the proper amount of restitution; and

h. the proper scope of injunctive relief.

46. These common questions of law and fact predominate over questions that affect only individual Class Members.

47. Plaintiffs' claims are typical of other Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Revlon's conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same misleading and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented.

48. Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of consumer goods.

49. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

50. Revlon has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

51. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Unfair and Deceptive Business Practices, N.Y. Gen. Bus. L. § 349

### (On Behalf of the New York Subclass)

50. Plaintiff Maria Khangi realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

51. During the New York Class Period, Revlon carried out a plan, scheme and course of conduct which was consumer oriented.

52. Revlon's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade, or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

53. As alleged herein, Revlon engaged in, and continues to engage in, deceptive acts and practices by advertising, marketing, distributing, and selling the Products with false or misleading claims and representations.

54. The New York Education Law states that "A drug . . . shall be deemed to be misbranded . . . [i]f its labeling is false or misleading in any particular," N.Y. Educ. Law § 6815; by misbranding the Products, Revlon engaged in, and continues to engage in, unfair and deceptive acts and practices.

55. Revlon's conduct was materially misleading to Ms. Khangi and the New York Subclass.

56. As a direct and proximate result of Revlon's violation of N.Y. Gen. Bus. L. § 349, Ms. Khangi and the New York Subclass were injured and suffered damages.

57. The injuries to Ms. Khangi and the New York Subclass were foreseeable to Revlon and, thus Revlon's actions were unconscionable and unreasonable.

58. Revlon is liable for damages sustained by Ms. Khangi and the New York Subclass to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, actual damages or $50 per unit, whichever is greater.

59. Pursuant to N.Y. Gen. Bus. L. § 349(h), Ms. Khangi and the New York Subclass seek an Order enjoining Revlon from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

**SECOND CAUSE OF ACTION**

**False Advertising, N.Y. Gen. Bus. L. § 350**

**(On Behalf of the New York Subclass)**

60. Plaintiff Marie Khangi realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

61. Revlon has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way (both by affirmative misrepresentations and by material omissions), constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

62. As a result of Revlon's false advertising, Ms. Khangi and New York Subclass Members have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Revlon is permanently enjoined by this Court.

63. Ms. Khangi and the New York Subclass seek to enjoin the unlawful acts and practices described herein, and, pursuant to N.Y. Gen. Bus. L. § 350, recover their actual damages or $500 per unit, whichever is greater, along with reasonable attorney fees.

**THIRD CAUSE OF ACTION**

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***

**(On Behalf of the California Subclass)**

64. Plaintiffs Lloyd Songer and Nicole Flick (the "California Plaintiffs") reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

65. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

66. The acts, misrepresentations and practices alleged herein constitute business acts and practices.

**Fraudulent**

67. A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

68. As set forth herein, Revlon's labeling and marketing of the Products as "Unscented" is likely to deceive reasonable consumers and the public.

**Unlawful**

69. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a. The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL");

b. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA");

c. The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FFDCA"), which states that "A drug . . . shall be deemed to be misbranded . . . [i]f its labeling is false or misleading in any particular," *id.* § 352(a)(1); and

d. The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq. ("Sherman Law"), which states "Any drug . . . is misbranded if its labeling is false or misleading in any particular," *id.* § 111330.

**Unfair**

70. Revlon's conduct with respect to the labeling, advertising, and sale of the Products was unfair because Revlon's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

71. Revlon's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the FAL, CLRA, FFDCA, and Sherman Law.

72. Revlon's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Revlon through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Products believing

they were unscented and therefore free of fragrance, when in fact they contain fragrance and are thus scented.

73. Revlon's conduct is particularly unfair in light of the skin sensitivities that often lead people to seek out unscented products who are then unknowingly exposed to an increased risk of skin and respiratory irritation.

74. Revlon profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

75. The California Plaintiffs and other California Subclass Members are likely to continue to be damaged by Revlon's deceptive trade practices, because Revlon continues to disseminate misleading information and command a price premium in the marketplace as a result of its deceptive practices. Thus, injunctive relief enjoining Revlon's deceptive practices is proper.

76. Revlon's conduct caused and continues to cause substantial injury to Plaintiffs and California Subclass Members. The California Plaintiffs have suffered injury in fact as a result of Revlon's unlawful conduct.

77. In accordance with Bus. & Prof. Code § 17203, the California Plaintiffs seek an order enjoining Revlon from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

78. The California Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

79. Because the California Plaintiffs' claims under the UCL sweep more broadly than their claims under the CLRA, the California Plaintiffs' legal remedies are inadequate to fully compensate the California Plaintiffs and other California Subclass Members for all of Revlon's challenged behavior.

## FOURTH CAUSE OF ACTION

### Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*

### (On Behalf of the California Subclass)

80. The California Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

81. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

82. As alleged herein, the advertisements, labeling, policies, acts, and practices of Revlon relating to the Products were likely to mislead consumers acting reasonably.

83. The California Plaintiffs suffered injury in fact as a result of Revlon's actions as set forth herein because they purchased the Products in reliance on Revlon's false and misleading marketing claims stating or suggesting that the Products are unscented and fragrance free.

84. Revlon's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Revlon has advertised the Products in a manner that is untrue and misleading, which Revlon knew or reasonably should have known.

85. Revlon profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

86. As a result, the California Plaintiffs, the California Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Revlon was unjustly enriched.

87. Pursuant to Cal. Bus. & Prof. Code § 17535, the California Plaintiffs, on behalf of themselves and the California Subclass, seek an order enjoining Revlon from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law.

88. Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to the California Plaintiffs and California Subclass Members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

**FIFTH CAUSE OF ACTION**

**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.***

**(On Behalf of the California Subclass)**

89. The California Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

90. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

91. Revlon's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by the California Plaintiffs and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

92. Revlon profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

93. Revlon's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

94. The California Plaintiffs and other California Subclass Members have suffered harm and presently seek injunctive relief, restitution, and attorneys' fees and costs.

95. Pursuant to California Civil Code § 1782, the California Plaintiffs notified Defendant in writing of the particular violations of the CLRA and demanded it correct the actions described herein. If Revlon does not implement remedial measures within 30 days of notice, Plaintiffs intends to amend their Complaint to include actual and punitive damages on behalf of the California Plaintiffs and the California Subclass.

## PRAYER FOR RELIEF

a. Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Revlon as to each and every cause of action, and the following remedies:

a. An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

b. An Order requiring Revlon to bear the cost of Class Notice;

c. An Order requiring Revlon to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

d. An Order requiring Revlon to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

e. An Order requiring Revlon to pay compensatory, statutory, and punitive damages as permitted by law;

f. An award of attorneys' fees and costs; and

g. Any other and further relief that Court deems necessary, just, or proper.

**<u>JURY DEMAND</u>**

b. Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 22, 2026



**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***